Thank you, Your Honor. May it please the court, counsel, guest. I am Rick Hearn. I represent Andrew Young. Mr. Young is currently serving a 30-year sentence in federal prison for the coercion and enticement of a minor and a sexual exploitation of a minor. But what makes this case somewhat unusual is this minor he never met. This case raises the... Well, they never met in person, right? But... Never met in person, Your Honor. Interacted with on a number of occasions. He interacted with, and that brings me to the point of this case brings the new and the old together. The new being the World Wide Web, Internet, cell phones. The old being boredom and the needing to do something, including sex. That can now be done not in person and can be done legally not in person. While I wasn't aware, there are people that are doing something called sexting in my world, the world we all live in, which is perfectly legal. These people can be married. They can be boyfriend, girlfriend. They can legally do it if they've never met. And they exchange sexually provocative role-playing text. They can even do it with pictures legally. And on the World Wide Web, this game can be played with someone 10,000 miles away in what are called chat rooms. Right, but not with a minor, right? So that's the issue. Without consent. And with a minor, it's without consent automatically. Yes, Your Honor. Not without consent. And that would be, none of this is permissible without consent. These chat rooms have rules about, but they're not enforced as this Court is probably well aware. We've just lost a connection here. This happened yesterday. It went in and out, but we haven't had a problem with people appearing on video being able to hear you. So go right ahead. Thank you. So this happens with controls. One of the apps in this case is called Whisper, another Imago, and they have rules that you need to be 18 or over 13 with parental consent. But we all know, everyone knows that those rules are not enforced. And so people do come in, come into these chat rooms. And these chat rooms, the sex that's done in these chat rooms, because they can have people from all around the world, millions of people, people that we can't even imagine. Yeah, but this was not an all around the world. I mean, this seemed to be a connection between your client and initially the victim's mother, right? Well, yes, Your Honor. There was a connection. The alleged victim or the victim in this case named my client, her local pedo or local pedophile. This case arises during COVID when the victim, by her own admission, became bored and decided to want to play a game to catch pedos or pedophiles. We know this because she described it with text having to do, I mean, text between her and another 13, 14-year-old schoolmate of the same sex. They talk about it, and this is important because many of the issues have to do with access to data that's on the victim's phone, okay? Now, this case starts when this game is played, my client and the victim, which lived in the same community, interact in one of these chat rooms, and his defense was that he didn't know her age. Now, whether that's believable or not, it was certainly relevant whether or not there was a game being played to catch pedophiles. Why would that be relevant? Couldn't she be under, she can be underage trying to catch pedophiles. She could be of age trying to catch pedophiles. So what would the fact of trying to catch pedophiles, what would that tell us about age? It tells us nothing per se by itself about age, Your Honor. It only says that she could have been not honest about her age. If she was honest about her age... That would be true no matter what she said, whether she was trying to catch pedophiles or not. That's correct, Your Honor. I do not dispute that she could have been an adult and been trying to catch pedophiles. The basis of your claim is that your client was denied the opportunity to present a fair defense because he was not allowed to present her text to her friend. That is one of the... How would those texts have influenced a jury's view of whether your client knew that she was underage? Her motivation, Your Honor, for communicating and interacting with my client is relevant in the cross-examination of her. Her motivation for corresponding with him, if her motive was to catch a pedophile, her motive would not have included, would be the argument, her true age. I don't understand the argument, counsel. It goes simply to, not simply, Your Honor, I apologize, but it goes to whether or not what her motive was. Her motive was to relieve boredom. It wasn't to start or have any kind of sexual relationship. In order to attract people to have that, it was reasonable and a jury could have that she was misleading of her age even by just going into adult chat room where she was in an adult-only chat room. That's no excuse, but that is the defense, is that on cross-examination, if she was doing this to multiple men and one of the texts that we had a big issue about getting in was where in that very same sentence where she was trying to catch pedos, she says she was talking to a 25-year-old army guy. But anyway... And was it part of your theory that she intended to go to the police with this information? No, Your Honor. It was part of our theory was that she was bored and that was by her own admission in those texts. I guess I still don't understand how the question of her strategy of trying to catch pedos is relevant to the question of her age. Your Honor, you are right. That is not relevant that she was playing the game to her age, but it goes solely to her motive for being in that chat room. And what does the motive have to do with it? If she had a motive of trying to catch pedos, is that an affirmative defense for your client? No, it's certainly not an affirmative defense. She's not a state actor, so there's nothing about that. Her trying to catch pedos and being in the chat room gave her a reason to not be telling her age. If you... She told people she was a minor. She was post-pubescent, obviously, Your Honor. But if she told people she was a minor, she would have had much less chance of having men interact with her in those chat rooms because they are aware that it's illegal to do so. Now, I can't prove that they're aware of that, but that was the argument is she did this in order to attract the highest number. And she wasn't trying to catch pedos. She was trying, Your Honor, with respect, to win a game with her friend and they were keeping up with who got the most pedos or who got the oldest pedos. And so there's no rule that she has to get those in this game in a legally fair way. Counsel, did you have the opportunity of cross-examining her? Yes, Your Honor. And could you ask her what her motivation was in whether she was trying to catch pedos without reference to these texts? I was allowed to ask... I was allowed to admit the portion of one sentence of the text where she says she's playing the game. I was not allowed to do any of the... So you would have been allowed then to explore various questions about whether she was playing a game. Yes, Your Honor. And in the course of that questioning then, you could have asked whether it was important to her to be able to play that game that she misrepresent her age. I could have done that, Your Honor. This could have been done without the text. Without the text, I could have done that. And we did ask her what I believe the government put on. She said that she told him her age. There's no dispute about that. It's a cross-examination of her. Well, if you told him, did you tell these other people about your age that you called? And how many did you catch? And who did you send pictures to? And those kind of things would have been crossed. But there was no she said she told him explicitly what her age was. Now, because of other technical kinds of things, these texts were all lost. Whether she told or didn't tell about her age, what he said to her, what she said, because it was on Snapchat, which my children are more familiar with than I am, we didn't get any of those. We did get... Or there was introduced evidence from this having to do with the pictures, but nothing about the actual communication. I think my time is up for now, and I'll hear any other questions. But otherwise, I'll... Can I have a question, counsel? Yes, Your Honor. My question is simply, am I correct that we review the district court's ruling on this evidence question for abuse of discretion? On the evidence question, if it's not the... Yes, Your Honor. However, if it's an interpretation of the rule of evidence, I believe it's de novo. But on admission or denial of admission, it's abuse of discretion, Your Honor. I do. Thank you. Okay. We'll save the rest of your time for rebuttal. We'll hear from the government. Thank you. Good morning. May it please the court. My name is Blythe McLean, and I'm an AUSA with the District of Idaho. I want to go straight to the point that counsel was just arguing. It's the government's position that the evidence was properly excluded by the district court under federal rule of evidence 412. The facts that summarize what those messages contained can be found in excerpts of record 264. The messages were between the victim and a friend of hers in which she was describing sexual conversations that she had with other men, not the defendant. Other men or just one other? I believe it was other men. However, they're not specifically named, so it could have been multiple messages about one man as well as separate men. The excluded evidence also included Facebook profiles where the victim was friends with other men, and there were also information about the victim's search history into pornography. Certainly, search history into pornography would be of the type of evidence that would be excludable by 412 because it shows what her sexual predispositions and behaviors are. Also, the Facebook profiles with other men and conversations about having conversations with other men is hardly relevant in this case because here we're talking about conversations that the victim had with the defendant. Counsel attempts to argue that, well, if she's telling other men that she's 18, then she must have told this defendant that she was also 18, but that's not based in any other facts in the case. The victim testified. She testified that she told the defendant that she was a minor at the time they were exchanging messages. The defense was allowed to cross-examine her on the comments to her friend about trying to catch a pedophile, which counsel has gone into in depth. There's another class of people that tries to actively catch pedophiles, and that's police officers. When police officers do stings to catch pedophiles, they don't do it by claiming that they're adults. They do it by claiming that they're minors. That's how you attract people who are sexually interested in children. That's exactly what this minor did. She was a minor. She didn't have to lie about her age. She was a minor. It was obvious from her profile pictures as well as from the conversations that they had. Also, when the defendant was confronted by the victim's mother about this relationship that they had online, that the defendant wasn't surprised or didn't appear to be unknowing that the victim was a minor. Did the defendant know the victim's mother personally? No, Your Honor. The defendant knew the victim's mother via Facebook and other social media websites. The victim's mother was active in the community, and he may have seen her in person at a community event. However, their conversations and relationship are over the internet as well. When you say that she was active in the community, you don't mean an online community. You're talking about actual physical community, as in, I think this is Blackfoot, Idaho or something. Is that right? That's correct. The victim and her mother lived in Idaho Falls, which is just a short distance from Blackfoot. The victim's mother was a political activist of sorts and would arrange and coordinate different types of rallies throughout the community. So, she was physically present and active in the community. I do also want to address the first issue that the defense raised in their brief about the cell phone evidence that was part of this case. I want to first point out that the district court considered the facts surrounding the destruction of the phone evidence, which is part of why we have an unclear idea of what those initial text messages contained. The district court did not find anything that supported a finding of bad faith. The district court's memo and decision can be found in excerpts of record 12 through 21. Specifically, in this case, the defendant cannot show that the government lost or failed to preserve the cell phone evidence in bad faith. Bad faith is, of course, a high burden for the court. The district court's ruling was based off of a proffer provided by defense counsel as well as the government. While that proffer is not in the excerpts of record, it is in the court record at ECF 48. It's also contained in the trial testimony of Detective Christofferson, who was the digital forensics examiner who downloaded the phone. In terms of the evidence showing that he knew she was underage, obviously you pointed to her testimony saying she told him. What else did the government put forward on this point? The government presented evidence of the victim's mother confronting the defendant, and of course the defendant's response wasn't that, oh, I didn't know she was 18. She wasn't 18. It was, um, he simply had this conversation and told the victim's mother that he should probably, she should probably find counseling for the victim, which indicates that he knew that she was underage and engaging in behavior that she shouldn't have been engaging in. Counsel, with respect to the jury form, I assume that the government is going to admit this is, that this was an erroneous form? Yes, Your Honor. And the government would have had a duty to identify that at trial. This is pretty, this is pretty clear error. That's correct, Your Honor. Are there any steps being taken to ensure that a form like this doesn't get used again? This is, I mean, it's just a clear misstep and seems unnecessary from everybody's perspective that we would use a form like this. Yes, Your Honor. And it's, of course, my personal practice to ensure that those forms are correct and don't contain erroneous or misleading language. Just to follow up on that, I had the same concern. I mean, we saw this before in Espino. I think I've even seen this happen one other time in a case before me, although that was a plain error case. And this, I think, is arguably not. And so, it does seem like something that should never happen. And it, I hope that steps are being taken to make sure that it doesn't. I agree, Your Honor. And I know that myself and the other AUSA who worked on this are both diligent about ensuring that those verdict forms are correct. In this case, the defense did raise the issue prior to the form being provided to the jurors. Part of Ninth Circuit case law has been that in order for there to be an objection, you have to raise the issue and then cite any relevant authority. The court provided an opportunity for the counsel to that wasn't done. What authority would have been needed? This was pretty clear error. I mean, it's just misstated. I understand why it was misstated. It felt like a little bit of a grammatical shorthand. It would have been a little more complicated to have explained the burden of proof for finding guilt properly. But it's clear error. And if it's clear error, what authority would have been needed? I think making sure that there was an objection and following up on that objection would have been appropriate. I thought you told us that Young did raise the issue. He raised the issue but didn't cite any authority or any reasons for why it was wrong. Is there other than that in the United States, we have to prove guilt by proof beyond a reasonable doubt. And you don't have to prove your innocence beyond proof beyond a reasonable doubt. I agree, Your Honor. And even if this court finds that a plain error standard doesn't apply, then the court can go to harmless error, which is a perhaps easier standard for the defense to meet. However, in this case, there was not harmless error either. The case law is very clear that the jury verdict form is to be considered along with the instructions. The instructions in this case were provided to the court in supplemental excerpts of records starting at page 3. And they clearly outline the burden of proof and place it on the government. Because the jury as to the burden of proof and any error that could have occurred by the use of the erroneous verdict form would be the form is phrased because it suggests that there has to be proof beyond a reasonable doubt to support either guilt or not guilty. That suggests that the same burden of proof is required to address both, which really sort of reduces it just to a preponderance of the time. That's where you put the X in the box because it's the same burden to prove either guilty or not guilty. Yes, Your Honor. I believe that's why the verdict form, we agree that the verdict form was erroneous. When considered along with the jury instructions that were correct, it's clear that the jury instructions themselves did not mislead the jury as to the burden of considering all the facts in this case, which is what the court would need to do to determine whether or not the error was harmless. There's overwhelming evidence of the defendant's guilt. But that's what I was going at kind of leading into this line of questioning is what other evidence the government put forward to show knowledge on the defendant's part that the victim was underage. So you mentioned some of the interactions with the mother, obviously the things that you pointed to at trial. Those were the primary evidence was the victim's testimony as well as the circumstantial evidence surrounding the confrontation by the victim's mother in this case. Counsel argued, at least as it relates to the phone evidence, that the victim's phone evidence would have shown, if it was complete, would have shown that the victim and the defendant had a conversation about the victim's age. The district court, when considering the destruction of the phone evidence, considered that argument to be speculative. It's speculative for two reasons. First, we know that there is evidence in this case that was destroyed prior to the phone coming into law enforcement hands. We know that because of the nature... It was destroyed by the victim? By the victim. Or her mother. Or her mother. Correct. The victim's mother also testified that she deleted items that can be found on the trial testimony, page 358, volume 2. And also, we know that they use Snapchat, which automatically deletes as messages are sent and received, depending on how the user sets the time frame. So was there any evidence that was from the... Did the government use anything that it extracted from the victim's phone in the course of the case? Or did most of the digital evidence come from the defendant's phone? Your Honor, both phone evidence were used in this case. Okay. What was found on the victim's phone? What still existed that you used at trial? I believe that there were images that were found on her phone that were also discovered on his phone as well. Counsel, Judge Gould, I have a couple of questions for you, if we have time for that. First of all, if panel thinks that the verdict form was plain air, and you're relying on harmless air, does it have to be harmless beyond a reasonable doubt? I believe that is correct, Your Honor. Okay. Thank you. Then is the other evidence that you have on the issue of his guilt, is it overwhelming beyond a reasonable doubt? Yes, Your Honor, that is the government's position, that based off of the victim's testimony, the conversations between the defendant and the victim's mother during the conversation where she confronted him about contacting her minor child, that both of those show beyond a reasonable doubt that the defendant, in fact, knew that she was under the age of 18. Thank you, Counsel. If there are no further questions, I would ask this Court to affirm the District Court's rulings. Thank you. Thank you. Mr. Hearn, rebuttal. Thank you. As far as the verdict form, we had a visiting judge from another circuit. Despite something that's just incorrect in the government's position, both the government and the defense counsel submitted good verdicts. I don't know where that verdict came from, from the visiting judge from the Tenth Circuit, but it obviously should have been not a good verdict form in the Tenth Circuit either. The way it came is we had a jury instruction conference, as everyone does, and since there was no real disagreement about the verdict form, then we went immediately into closing arguments. The government made their closing argument as we're reading the final verdict form and jury instructions, and we see it, and that's when we raised our objection. Our position, which I think is correct, is that it's a 52A harmless error, and there is not testimony. Snapchat did erase everything, but we had a retained expert about the data on the phone that was missing, and there were two apps. There was evidence about two apps, Omegle and Whisper. Those do not erase things, and according to our expert, they should have been on the download from Cellebrite, from the forensic thing, but a little detail here. When they first Cellebrite downloaded the victim's phone, they reset it back to zero, so everything was lost, but they got an extraction. Then they made a report from that extraction that they had and gave that to us. We had a forensic expert to look at that, and he said, well, I need the original, and when we went and asked for the original, it had also been lost after the government knew that we were interested in it. But Omegle and Whisper is where we believe there were discussions from our client about age. Those were certainly, Whisper was one of the places where the victim admitted she was on and talking to people. She had a picture from Omegle, which is another one of these chat rooms where this kind of kink stuff is discussed. On the victim's phone, there were pictures. Our expert said from that, if he had those pictures not from the report, but from the original, he would have been able to look at who those pictures may have been sent to. They were screenshotted of pictures of herself and who she was communicating to. But because the data was lost the second time, we were unable to, the expert was unable to- On the victim's phone, there were images, but you couldn't tell who they were transmitted to? Not on the Cellebrite report, but our expert put in an affidavit that he believed he would have, if he could have gotten the extraction that had been lost, that the government had and lost. But I don't know, but that's what our retained expert testified to and put in an affidavit saying. So counsel, if I could interject a question, please. Yes. How can we know, so rather I'll rephrase it. It seems speculative to me whether that would have provided a defense to your client. So explain the relevance of that. Yes, your honor. Zarazuza is the case we rely upon. It's a brief there where the court found probative exculpatory evidence was sufficient in the due process to dismiss the indictment. And Zarazuza, there was a video loss showing the person going across the border where she was trying to get away, she claimed. The only evidence that wasn't, she said it would show me trying to get away, it got lost. Here, we don't, our expert couldn't say for sure what was on the lost data, but he could say, based upon his years of experience doing this, what should have been on the report that the government gave us, and it wasn't there, and that's in our briefing. Any further questions? Thank you, your honor. Thank you. I want to thank both counsel for the briefing and argument. This matter is submitted.
judges: GOULD, BYBEE, BRESS